Gittings, *et al. vs.* Worthington, *et al.*

Lambert Gittings, John Bolgiano, and others *vs.* Emily Worthington, George Worthington, and others. P. Hanson Hiss, andothers *vs.* Same. Saint Paul's Evangelical Lutheran Church of Baltimore City *vs.* Same.

*Joint-owners—Partition—Improvements—Allotment—Special Warranties—Contribution—Assessment—Lessee and Reversioner—Equity practice.*

Where the vendee of real property purchased at a judicial sale, which did not bar the title of some of the joint owners, has sold and given deeds of portions of the land to purchasers who have improved them by the erection of valuable buildings, such sales do not increase or diminish the rights of such joint owners, who, not being bound by such sales, may proceed to have a partition as if they had never been made.

If the shares of such joint owners not barred· by the previous judi-
cial sale, claimed in such partition proceedings, were assigned out
of the improved property, and an inquiry should be instituted to
ascertain the amount to be allowed for improvements and other
beneficial expenditures, a very large amount of labor and cost
would have to be incurred.

The simple and eligible mode of making the division would be to
take the part claimed by such joint owners from the unimproved
portion of the tract, if practicable.

When such joint owners prosecute their suit for partition as the
holders of a common interest, and the portion to which they are
entitled collectively has been allotted to them, they can by petition
·in the suit, obtain a re-division among themselves, according to
their respective interests, or a sale of the whole of their allotment
and a division of the proceeds, if the re-division of the land can-
not be made without loss or injury.

The responsibility of the vendee of the property purchased at the
judicial sale to his vendees is measured entirely by the special war-
ranties contained in his conveyances; and he cannot under them
be made to satisfy the paramount claim of said joint owners en-
tirely out of the property which remains in his hands unsold.

As a necessary consequence, he must be indemnified by the owners of
the other portions of the tract, claiming under him, by contribu-
tions in proportion to the value of their holdings; so that the
entire tract may be assessed ratably to make up the value of the
portion allotted to the claimants by superior title; the basis of
estimation being the value of the ground considered irrespective
of the improvements.

The entire tract should contribute to make up the value of the por-
tion which shall be taken from the unimproved land, and to make
·up this contribution the value of the land must be estimated with-
out regard to the improvements, and every portion of the tract
must be charged with a sum proportioned to its value.

If land leased for a term of years is to be assessed, the assessment
must be levied on the lessee and the reversioner, in proportion to
the value of their interests.    .

It is competent for the Circuit Court to cause the partition to be
made by commissioners, and to direct them to ascertain the sums
to be assessed on the different portions of the tract. When these

assessments have been ratified by the Court it can compel payment by sale of the property assessed.

APPEALS from the Circuit Court of Baltimore City.

The decree from which these appeals are taken provided for a sale of the entire tract of land in controversy, the improved as well as the unimproved portions, making to the owners of the improved portions a proportionate allowance for the value of all beneficial, permanent improvements of the said property, according to its present improved condition, and a proportionate allowance for all such taxes and insurance as may have been paid by them for the times respectively, during which they were required to account for rents and profits.   The case is stated in the opinion of the Court, and in *Long vs. Long*, 62 *Md.*, 33.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, and BRYAN, J.

*Arthur W. Machen*, and *Edward Otis Hinkley*, for the appellants, Lambert Gittings, and others.

In equity, there is no necessity that a partition should be so made as to give each party a share in every part of the property.   Each party must have his share in *value*, and that is all which is required.

*Brookfield vs. Williams*, 1 *Green's Ch.*, 341, 345, where the principles upon which Courts of equity proceed in cases of partition are succinctly and clearly stated.   *Hagar vs. Wiswall, et al.*, 10 *Pick.*, 152 ; *Buck vs. Wolcott, et al.*, 15 *Gray*, 502; *Paddock vs. Shields*, 57 *Miss.*, 340; *Abbott vs. Berry*, 46 *N. H.*, 369; *Lord Macclesfield, L. C. in Earl of Clarendon vs. Hornby*, 1 *P. Wms.*, 446, quoted in the note to *Agar vs. Fairfax*, 2 *White & Tud. L. C.*, part 1, *page* 471, *marg.; Kindersley, V. C., in Canning vs. Canning*, 2 *Drewry*, 336, quoted in same note, *p.* 471, 472.

Upon the bill in this case, partition is the proper relief if the property admits of it and no injury is thereby done

to the claimants; and the proof does not justify a sale. *Earle vs. Turton, et al.*, 26 *Md.*, 34; *Thruston vs. Minke, et al.*, 32 *Md.*, 576; *B. & O. R. R. vs. Trimble*, 51 *Md.*, 109.

As between a sale and an actual partition, the Court *inclines* to the latter alternative. *Thruston vs. Minke*, above cited, and other cases referred to in American note to *Agar vs. Fairfax*, 2 *Wh. & Tud. L. C.*, *part* 1, *p.* 916; *Catlin vs. Catlin*, 60 *Md.*, 577.

It is the duty of the Court of equity in making a partition to cause the improvements to be assigned to the respective owners of them. *Freeman on Co-tenancy and Partition*, sec. 509; *Brett, M. R., Leigh vs. Dickeson, L. R.*, 15 *Q. B. D.*, 65; *Crafts vs. Crafts*, 13 *Gray*, 360; *Brookfield vs. Williams*, 1 *Green's Ch.*, 341; *Hall vs. Piddock*, 6 *C. E. Green*, 311; 2 *Wh. & Tud. L. C.*, *part* 1, *p.* 916.

Sub-divisions should generally be remitted to subsequent proceedings in which those interested only would be necessary parties. *Oram vs. Young, et al.*, 3 *Harrison, N. J.*, 54; *Gordon, et al. vs. Pearson*, 1 *Mass.*, 323.

A party whose share can be set off without any prejudice to the other owners, ought not, against his will, to have his share sold because the other owners hold in shares so small that a sale of the residue becomes necessary. *Haywood vs. Judson, et al.*, 4 *Barbour, S. C.*, 228; *Lucas, et al. vs. Peters, et al.*, 45 *Ind.*, 318.

The Knapp ladies constitute but one heir. *Hoffar vs. Dement*, 5 *Gill*, 137; *Gilpin vs. Hollingsworth*, 3 *Md.*, 194; *Thomas vs. Farmers' Bank of Md., et al.*, 32 *Md.*, 57. Their part should be disposed of according to the Act to Direct Descents. *Chaney and Wife vs. Tipton, et al.*, 11 *G. & J.*, 253; *Phelps, et al. vs. Stewart*, 17 *Md.*, 231.

*Sebastian Brown*, for Thomas P. Stran, and others, appellants.

Gittings, *et al. vs.* Worthington, *et al.*

When a co-tenant has made improvements on a portion of the property, the partition will be so made as to allot him the land so improved, if this can be done without injury to the parties. This rule would be adopted if the improvements had been made by Hiss; and certainly his grantees who paid him full value for the property, must receive at least like protection from the Court. 1 *Story's Equity, sec.* 655; *Lauvalle, et al. vs. Menard, et al.,* 1 *Gilman's Rep.,* 45; *Town vs. Needham,* 3 *Paige Ch.,* 553; *Brookfield, et al. vs. Williams, et al.,* 1 *Green's Ch. Rep.,* 345; *Hart vs. Hawkins, et al.,* 3 *Bibb,* 510; *Pope vs. Whitehead, et al.,* 68 *N. Carolina,* 199; *Drennan vs. Walker,* 21 *Ark.,* 557; *Seale vs. Soto,* 35 *Cal.,* 104; *Worthington vs. Staunton, et al.,* 16 *W. Va.,* 241; *Campau vs. Godfrey, et al.,* 18 *Mich.,* 36; *Bigelow vs. Littlefield,* 52 *Maine,* 25 ; *Freeman on Co-tenancy and Partition,* 465, 509.

If, therefore, a partition can be so made of this property that the Worthington and Knapp heirs can receive their shares out of the unsold property, that course should be adopted, and the result would ratify and confirm all the deeds and leases made by Philip Hiss.

A partition and not a sale should always be ordered where the property admits of partition without injury to the parties interested, and the Court always inclines to a partition. *Earle vs. Turton, et al.,* 26 *Md.,* 34; *Thruston vs. Minke, et al.,* 32 *Md.,* 576; *B. & O. R. R. Co. vs. Trimble, et al.,* 51 *Md.,* 109; *Agar vs. Fairfax,* 2 *White & Tudor L. C., part* 1, *page* 916; *Catlin vs. Catlin,* 60 *Md.,* 577.

*M. R. Walter,* and *S. Teackle Wallis,* for the appellants, P. Hanson Hiss, and others.

There is no liability of any kind whatsoever upon Hiss' devisees to make good to Hiss' grantees their loss. On the contrary, if a partition in kind, out of the vacant ground be, in the opinion of this Court, practicable, Hiss'

grantees must indemnify his devisees for all the land over and above their seven thirty-sixths proportion, taken from them to satisfy the claimants; and if a sale be necessary, each holder must pay seven thirty-sixths of the proceeds of his lot to said claimants, without any indemnity therefor from said devisees.

A vendor selling in good faith is not responsible for the goodness of his title, beyond the extent of his covenants in the deed. *Falconer vs. Clark & Griffith*, 3 *Md. Ch. Dec.*, 151; 7 *Md.*, 177; *Smith vs. Chaney*, 4 *Md. Ch. Dec.*, 246; *Harris vs. Morris*, 4 *Md. Ch. Dec.*, 529.

If a purchaser has taken a conveyance, and there be no fraud, *he has no remedy*, though evicted for want of title, except upon the covenants of his deed. *Middlekauff vs. Barric, et al.*, 4 *Gill*, 291.

The purchaser's only right to relief from defects or incumbrances, *whether at law or in equity*, depends, in the absence of fraud, solely upon the covenants for title which he has received. *Rawle on Covenants for Title*, (*4th Ed.*, 1873,) 566.

It is one of the most settled principles of this branch of the law, that a purchaser who has received no covenants which cover the defect or incumbrance, can neither obtain the purchase money, nor recover it back, if already paid. Unless there has been fraud, accident or mistake, he is absolutely without relief against his vendor, either at law or in equity. *Rawle on Covenants for Title*, 567; 1 *Sugden on Vendors*, (*Ed.* 1873,) 303; 2 *Sugden on Vendors*, (*Ed.* 1873,) 193.

*Julian I. Alexander*, and *I. Nevett Steele*, for the appellees.

BRYAN, J., delivered the opinion of the Court.

This is the second appeal in this case. On the first appeal it was decided by this Court, that the children of

Mrs. Worthington were entitled to one-sixth of the real estate sold under the decree of 1833, and that the heirs-at-law of Moses L. Knapp, were entitled to one-sixth of one-sixth of the same property. *Long vs. Long*, 62 *Md.*, 33. The bill filed in the case, sought a partition of the land devised by the will of Kennedy Long. The complainants were not in possession, and their title was denied by the defendants. The question of the jurisdiction of a Court of equity to decree a partition under such circumstances, was not before this Court. The parties had waived it by express agreement filed in the Court below; and under the statute, the Appellate Court had no power to consider it. It was obliged to assume that the complainants were entitled to a partition, provided they showed a title to an undivided portion of the property. And the decision was, that the sale in 1833, under the decree of Baltimore County Court, and the subsequent proceedings under that sale, did not bar the title of Moses L. Knapp and the children of Mrs. Worthington. Philip Hiss acquired the title of the purchaser at this sale, and since the acquisition of his interest, he has disposed of a large portion of the property ; in some instances making leases for ninety-nine years, renewable forever ; and in others, executing deeds in fee. He has also sold the reversions in fee, and rents of some of the property leased by him. The land sold and leased was laid off into lots, and described by metes and bounds in the conveyances to the purchasers and lessees; and these lots have been improved by the erection of valuable buildings. Nearly one-half in area of the land purchased at the sale in 1833, was in the possession of Philip Hiss at the time this bill was filed, and is now held by the devisees named in his will. All of this portion is still unimproved. At the time of the sale under the decree of 1833, this tract was remote from the inhabited portions of the city, and was valued at about five thousand dollars. It was rented for two hundred

dollars a year, and after the payment of taxes and insurance, the net amount was very trifling. The buildings and fencing were going to decay, and to all appearance it was very undesirable property. But the growth of the City of Baltimore in the course of half a century, has made an enormous difference in its value. Streets have been opened through it and far beyond it, and it has become suitable for the residences of persons whose means are sufficient to provide the comforts and conveniences of life. The value at the present time, exclusive of the improvements, has been variously estimated by the witnesses examined in this cause at sums ranging from $160,000 to $235,000.

If Hiss had remained in possession of the whole tract, it would have been most just and reasonable, that the portion now claimed by the Worthingtons and Knapps, should have been allotted to them out of the unimproved portion; provided this division could have been made without injury to their interests. The sales by Hiss could not increase or diminish any rights which those persons had, who were co-owners with him of the whole tract. These co-owners not being bound by those sales, have a right to proceed with their partition, as if they had never been made. They have not, however, any greater rights than they would have had if Hiss had kept the property in his own hands. It was decided when this cause came before this Court for the first time, that as the present possessors of the property were innocent *bona fide* holders by virtue of a judicial sale, they would be entitled to a proportionate allowance for the value of all beneficial permanent improvements of the property, and also for taxes and insurance which have been paid by them. If the portion now claimed should be assigned out of the improved property, and then an inquiry should be instituted to ascertain the amount to be allowed for improvements and other expenditures proper to be al-

lowed, it is evident that a very large amount of labor and cost would be incurred.

The investigation would embrace a great number of details, about which it would be vain to expect certainty or accuracy. The tract originally contained a fraction more than seven acres. In the course of fifty years, it has passed from the uses of rural life, and has been adapted to the requirements of a large city; more than one-half of it being occupied by valuable residences. It would be a task of exceeding, and almost hopeless difficulty, to estimate the beneficial expenditures which have been made on so large a body of land, in its long progress through so great a change. The simple, ready and eligible mode of making the division, is to take the part now claimed from the unimproved portion of the tract, provided it is practicable. This portion amounts to nearly one-half of the whole tract in area, and about forty per cent. in value. The combined interests of the Worthingtons and Knapps come to seven thirty-sixths of the whole tract. The property fronts on Madison avenue, McCulloh street and Druid Hill avenue. It is well known that the customary and almost invariable mode of valuing ground in the City of Baltimore, is by the front foot. Five witnesses have been examined, who have made an estimate of the value of all this property by the front foot. While they differ considerably in their valuations of the property, they agree pretty nearly as to the proportions of value between the improved and the unimproved. Two of them put the unimproved portion at forty-one per cent. of the whole; two at about forty per cent., and one at forty-two per cent. Now the portion to be set off is about twenty per cent. of the whole. There can be no difficulty in laying this off. The whole property is valued at so much a front foot, the value of the front foot varying on the different streets. So this portion may be justly and fairly ascertained, even to the fraction of an inch, and

the claimants can obtain the uttermost value of their interests. It is difficult to estimate the amount of disaster which would be caused by a sale of all this property. We are to consider that a large number of families would be turned out of their homes, or compelled to buy them. The purchase money would be paid into Court, and there detained until there was an adjudication establishing the amounts of money to be allowed them for their improvements. The inquiry would be long, tedious and perplexing. At the very best, the result would be reached by adopting the opinions of witnesses on subjects, about which they could not have any exact and accurate knowledge. The land and improvements would be sold, and witnesses would be called to state their opinions as to what portion of the price should be allowed to the improvements. The value of improvements and the proportion in which they increase the value of the land on which they are erected, depend on a great number and variety of circumstances. They must be in the nature of things somewhat conjectural. But land is daily bought and sold in the City of Baltimore, and its value by the front foot is as readily and easily ascertained, as that of any commodity in the market.

It may be said that each one of these claimants is entitled to his or her portion in severalty. They have prosecuted their suit as the holders of a common interest, and have been so regarded by this Court. When the bill was dismissed by the Circuit Court, the children of Mrs. Knapp were not in a condition to appeal; for the reason that they had been made defendants. This Court, however, perceiving that the litigation was for the common benefit of all these claimants, gave them the benefit of the appeal, without regarding their position on the record, which would have precluded an appeal on their part. When the portion to which they are entitled collectively has been allotted to them, they can, by petition in this cause,

obtain a re-division among themselves according to their respective interests, or a sale of the whole of their allotment, and a division of the proceeds, if the re-division of the land cannot be made without loss and injury. This mode of proceeding would secure all their rights, and would relieve the other possessors of this tract from vast and unnecessary expense and inconvenience. It is undoubtedly within the power of a Court of equity to adapt its methods to the exigencies of justice, being careful, however, not to grasp at forbidden power, for the purpose of relieving the hardship of a particular case. In the present instance, it is the duty of the Court to allot to the claimants their share of this property, and it is simply a question of proceeding, whether this result is accomplished by one division of the whole mass, or by a series of subdivisions. If a testator should direct that one-eighth of his personalty should be equally divided among the children of Richard Roe, and Roe should have nine children, an auditor would first ascertain the amount of an eighth part of the personalty, and would then divide this eighth part into nine other parts; one for each of the children. It cannot be possible that such a method of division would not be equally admissible in the case of real estate. If in the instance just supposed, the testator had left an eighth of his real estate to the children of Richard Roe, and he had died seised and possessed of eight tracts of land of equal value, every one would readily recognize the injustice to the other devisees, which would be wrought by a decree that the whole of the realty should be divided into seventy-two parts, and if this could not be done, that it should all be sold. And yet not less injustice would be done in this case by a sale of the whole tract.

The conveyances by Hiss contained only special warranties. A question has been presented and argued relating to the duty of contribution as between him (or his devisees) and the persons who purchased and leased from

him.   A majority of the Court are of opinion that the re-
sponsibility of Hiss to his vendees is measured entirely by
the special warranties contained in his conveyances; that
these special warranties were distinct covenants that he
was not to be answerable for any losses which might occur
from the assertion of a title superior to his own; that if
he is required to protect these purchasers from the claims
of the Worthingtons and Knapps, he is in effect made to
give them all the benefit which could be derived from a
general warranty; and that therefore he cannot be made
to satisfy this paramount claim entirely out of the portion
of the property which remained in his hands.   As a ne-
cessary consequence of these propositions, he must be
indemnified by the owners of the other portions of the
tract by contributions in proportion to the value of their
holdings; so that the entire tract may be assessed ratably
to make up the value of the portion allotted to the claim-
ants by a superior title; the basis of estimation being the
value of the ground, considered irrespectively of the im-
provements,   I am constrained to dissent from these con-
clusions.   The question in my view, does not involve the
obligations arising from general or special warranties made
by a vendor of real estate.   When Hiss made conveyances
to these persons, he was lawfully entitled to four-fifths of
the whole tract.   These lots were set off to the vendees
and lessees by metes and bounds.  Of course, as against
their vendor and lessor, they have a right to hold the
whole of the property purchased and leased.   In other
words, they acquired all the title which he was competent
to convey.   It is not my opinion that he was obliged to
warrant and defend the title to these lots against persons
claiming by a superior title; but that he conveyed such
title to the property described by metes and bounds as he
had, and, as he was able to convey.  He surely could con-
vey an absolutely indefeasible title except so far as it was
affected by the claims of the Worthingtons and Knapps.

Gittings, *et al. vs.* Worthington, *et al.*

We have seen that they will be required to take their fifth interest out of the unimproved property, and to abstain from interfering with the portion which has been sold by Hiss. The right of enforcing such a mode of division is a valuable incident to the property, and essential to its protection by its owners. When Hiss sold these lots he parted with every vestige of interest in them, and of necessity this right was conveyed to his vendees along with every other, which concerned the ownership of the property. We may say in a few words, that the equities of the case protect these improved lots from the claims of the Worthingtons and Knapps, and the owners of them have purchased from Hiss all his rights in them. I think that we can exhibit the true state of this question by a familiar illustration. Suppose that Hiss had been in possession of a quantity of flour, say a hundred barrels, and had sold to different purchasers sixty barrels, expressly stipulating that he would not warrant the title ; and suppose that after these sales had been made Worthington had successfully maintained a claim to an undivided fifth interest in the whole quantity. Hiss would have been obliged to deliver to him twenty of the barrels remaining in his hands; and certainly he could not have claimed contribution against the purchasers of the sixty barrels. Every one must see the essential identity in principle of this supposed case with the one we are now considering. As he made only special warranties in his deeds, if his vendees had been evicted by a paramount title, they would have had no recourse against him. But most assuredly he (or rather his devisees) cannot complain, if his vendees maintain the possession purchased from him by means of an equitable right incident to that possession, and given by the law for its protection. If the property had remained in his possession, he would have protected it by this very equity, and his vendees merely seek to exercise a right which they have purchased and paid for. As they

have only special warranties they could not claim any-
thing from him, if they had been evicted; but in this in-
stance he seems to be claiming something from them,
because they have not been evicted. It appears to me
just, that these parties should stand where the circum-
stances of the case have placed them. If the vendees can
protect their holdings by means of any principle or rule
of equity, they ought to be permitted to do so: and the
loss arising from the assertion of this claim for partition
ought to rest where it may fall. Hiss has sold these lots,
and has been paid for them. It is hard that he should
lose some of the unimproved lots; but this misfortune
does not give him any claim against those who have pur-
chased from him. These purchasers have no claim against
him; nor has he any claim against them. Each must be
content with such protection as fortune or circumstances
may extend to him. It does not appear to me that Hiss
or his devisees have any equitable right to call on his
vendees for contribution. I do not think that this ques-
tion is decided by the accidental circumstance that parti-
tion is to be made by an actual division of the property,
instead of being effected by the instrumentality of a sale.
It depends on the rights of the parties, and not on the
forms of proceeding. If the entire tract with all the im-
provements should be sold, the rights and equities of the
parties would attach to the proceeds of sale in precisely
the same measure as they now affect the land. The sale
would merely change the form of the property, and could
not increase or diminish any interest in it. The vendees
and lessees would be entitled to receive what their lots
and improvements sold for; the co-owners with Hiss would
receive their due proportion; and Hiss or his devisees
would receive the remainder. These considerations may
tend to illustrate more fully the flagrant and unnecessary
aggravation of the costs which would be incurred by a
sale of the whole tract.

Gittings, *et al. vs.* Worthington, *et al.*

I have dispensed with the discussion of some questions which were debated at the bar. The holders of these lots are not tenants in common with the Hiss devisees, or with their co-owners. Tenants in common are said by Blackstone to be "such as hold by several and distinct titles, but by unity of possession; because none knoweth his own severalty, and therefore they all occupy promis- cuously." The relative rights of Hiss and his co-owners may be determined by considering them as tenants in common; inasmuch as, although, the latter were kept out of possession; yet they have been decreed to be entitled to an undivided portion of the entire tract. But there is no unity of possession between either of these persons, and the holders of the several lots. The essential ele- ment of a tenancy in common is absent. Each of the holders of the lots claims and possesses in severalty the land lying within his metes and bounds, and has no color or pretence of possession to the portions of the tract lying beyond them. The rights of the Worthingtons and Knapps are not in any degree affected by these latter titles or possessions. They exist and are to be asserted without any reference to the conveyance made by Hiss to the holders of these lots. They have no interest or con- cern in the validity or extent of their pretensions; and most certainly can in no respect be considered as having a unity of possession with them. It would greatly mis- lead our judgment, if we were to attempt to dispose of this question by considering what would be the effect, if there had been a recovery in ejectment against each one of these owners. There is no such condition of things. This Court has decided that the Worthingtons and Knapps are entitled to have partition of the whole tract by proceedings in equity, the question of jurisdiction having been duly waived by the parties to the cause. Now we must take this determination just as it is, with- out any strained analogy to the results of other proceed-

ings which have not taken place. It gives the co-owners with Hiss the right to have their undivided interest allotted to them out of the whole tract, and this right must be pursued and attained according to the rules of equity practice. I have endeavored to state them in what I have said. As my views however are not shared by the majority of the Court, they are without avail.

It will be seen that we differ from the learned Circuit Court.—Its decree must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Decree reversed, and*
*cause remanded.*

(Decided 17th March, 1887.)

Subsequently, BRYAN, J., delivered the following additional opinion of the Court:

The Court has been requested by the counsel for the Hiss devisees to state the application of the language of the opinion to the question of contribution on the part of the lessees from Hiss. This request appears to us in all respects reasonable. It is of course much to be desired that there should be no doubt about the opinion of the Court on questions involved in its decisions. The majority of the Court hold that the entire tract should contribute to make up the value of the portion which shall be taken from the unimproved land, and that to make up this contribution the value of the land must be estimated without regard to the improvements, and that every portion of the tract must be charged with a sum of money proportioned to its value. It is also held that the responsibility of the devisees of Hiss is dependent upon, and limited by, the covenants contained in his conveyances. The deeds and leases are not in the record, but we supposed from the argument on both sides that the Court

was desired to express an opinion on the effect of special warranties. We mentioned the cases of vendees and owners, because we wished to show the rights of contribution which existed against those who were entitled to the entire fee simple, and because in such case (as we were informed at the argument) the special warranties stood unaffected by anything else in the deeds. But we think that the principle stated in the opinion covers every imaginable case where an interest has been acquired from Hiss by any species of conveyance. Where land is leased for a term of years, the whole interest is comprehended in the term and in the reversion. The lessee and the reversioner together own the land; their combined interests make up the ownership. When the land therefore is to be assessed, the assessment must be levied on lessee and reversioner in proportion to the value of their interests. Now to apply these remarks to lessees from Hiss, where his devisees hold the reversion; the term and the reversion must bear their proportionate burdens, just as where the reversions are held by third persons. If, however, there are covenants in a lease by which the reversioner is liable to make good to the termor his loss in case of eviction, the whole amount assessed on the land must be paid by the reversioner. In the absence of such covenants, the rule of contribution prevails, which we have stated. A great variety of covenants may be inserted in a lease; those most usually employed have reference to the tenant's obligation to pay rent while he continues in possession of his term. Unless we had the covenants in these leases before us, we could not speak more definitely on this subject than we have done. When a tenant is evicted from any portion of the premises, ordinarily there must be a proportionate abatement of the rent. He is deprived entirely of a portion of the land for which he contracted to make his annual payment to the landlord ; he loses his possession and the landlord loses his rent. But in the case

where the tenant and the reversioner together make up the loss, it would not be right to abate the rent. Instead of losing his rent, the reversioner loses the amount which he is obliged to contribute ; and the tenant is relieved of a portion of the loss, instead of being allowed an abatement of the rent.

It is competent for the Circuit Court to cause the partition to be made by commissioners, and to direct them to ascertain the sums to be assessed on the different portions of the tract. When these assessments have been ratified by the Court, it can compel payment by sale of the property assessed.

I am directed by the majority of the Court to make the foregoing addition to the opinion heretofore filed. I do not, however, wish it to be understood that my own personal views have undergone any change.

(Filed 29th April, 1887.)