SARAH GODWIN *vs.* ANDREW BANKS ET AL.—
MARGARET GODWIN ET AL. *vs.* ANDREW
BANKS ET AL.

*Partition—Acquiescence in Interlocutory Decree—Allotment of One
Share to Several Co-Tenants—Appeal in Equity.*

The return of commissioners to make partition of property will not be
set aside on the ground of mistake in valuation, unless there be
clear evidence of a serious error.

In a partition proceeding, where several co-tenants are jointly entitled
to one share of the estate to be divided, it is not necessary that such
share should be sub-divided among such co-tenants when they do
not demand a severance.

An interlocutory decree of partition and the return of the commission-
ers divided the estate into five parts, one of which was allotted to
four persons who were jointly entitled to one-fifth of the estate. The
interlocutory decree was passed after acquiescence in it by the par-
ties. *Held*, that after the return of the commissioners and the pas-
sage of a final decree of ratification, it cannot be objected that the
shares of the four co-tenants should have been given to them in
severalty.

Code, Art. 5, sec. 26, authorizing a review of previous orders upon
appeal from a final decree does not refer to previous orders passed
by consent and under which the parties acted.

Two appeals from decrees of the Circuit Court of Balti-
more City (WICKES, J.)

The cause was argued before McSHERRY, C. J., FOWLER,
PAGE and BOYD, JJ.

*John P. Poe* and *George Whitelock*, for the appellants.

*William Pinkney Whyte* and *Fielder C. Slingluff*, for the
appellees.

*Arthur George Brown* and *George Stewart Brown* filed a
brief for Andrew Banks and wife.

BOYD, J., delivered the opinion of the Court.

The bill was filed in this case by Anna and Sarah Godwin, adult children of Anna .W. Godwin, to have a partition of the property allotted to her in the division of the estate of Daniel B. Banks, her father, and to have the will of said Banks construed, so far as it affected the interest of W. Frank Godwin, Jr., who died after the death of his mother, Anna W. Godwin. The infant children of Mrs. Godwin and the other heirs at law and next of kin of Daniel B. Banks, together with a trustee in insolvency of one of them, were made defendants. After the answers were filed and testimony taken, a decree was passed construing the will of Mr. Banks and appointing commissioners to make a partition of the property. By that decree it was determined that under the will the one-sixth interest of W. Frank Godwin, Jr., passed to the heirs at law and distributees of the testator, and the property was directed to be divided into six equal parts—one-sixth to each of the five surviving children of Mrs. Godwin, and the other sixth to said heirs at law and distributees. On appeal to this Court that decree was affirmed—the only questions considered, however, being the construction of the will and whether the trustee in insolvency took the interest of the insolvent in this property. The decree also provided for the partition of W. Frank Godwin's sixth interest, and after the decision of this Court the commissioners· proceeded with the partition and duly reported their proceedings to the Court. The Godwins excepted to the report, and the exceptions having been overruled, and the final decree ratifying the report, and another directing the sale of the part of the sixth interest allotted to the Godwins, having been passed, appeals were taken by Sarah and Margaret Godwin, adults, and Alice Godwin, infant, by her next friend.

The exceptions urged before us are, (1) because the commissioners allotted to Margaret Godwin a property on Baltimore street, in the city of Baltimore, which it is alleged is old and difficult to rent, and hence the partition in this re-

spect was grossly unfair to her, and (2) because " Subdivision F " of the report was allotted to the five Godwin children as tenants in common, and " Subdivision L " was allotted to four other parties, and no ultimate or final partition in severalty was made of the property mentioned in the subdivisions.

1. The total estate divided, after deducting certain sums for fees, costs, etc., amounted to $77,615.74, including $1,118.17 of cash, which the commissioners divided into six equal parts, valued at $12,933.95. The five shares allotted to the Godwin children are spoken of as Grand Divisions A, B, C, D and E, and the other sixth was divided into five parts, called Subdivisions F, G, H, K and L. Grand Division A was allotted to Margaret Godwin, and consists of this property on Baltimore street, which was valued at $11,500.00 ; a ground-rent valued at $1,043.48 ; four shares of Central R. R. Co. stock at $160.00, and cash $232.47. The testimony of the witnesses, taken on behalf of the exceptants, tends to show that the Baltimore street property spoken of has very greatly depreciated in value during the past sixteen years, and is still depreciating; that it is difficult to rent to advantage, and is sometimes without tenants. The three commissioners, who made the partition, were examined and their testimony not only shows familiarity with the values of real estate in Baltimore, but that they exercised great care in the division of the property. Indeed the valuations placed by them on the respective properties do not seem to be seriously questioned. This particular property, now being considered, is assessed for taxation at $14,000, and at the time the partition was made was yielding about ten per cent., gross income, on the valuation placed on it by the commissioners. Judging from the evidence in the record it is by no means certain that it cannot now be sold for more than it was valued at.

The prayer of the bill was that partition be made of the whole property into six equal parts, one of which to be allotted to each of the Godwins, and the remaining sixth to

be set apart as the share of W. Frank Godwin, Jr.    It
then asks for a construction of the will of Mr. Banks, and
prays that if the executory devise spoken of be held valid,
the one-sixth so set apart be sold and the net proceeds
divided among the several parties entitled thereto.    The
adult defendants, by their answer, made no objection to the
partition into six parts, but several of them alleged that it
was impossible to tell whether the sixth part to be allotted
as the Frank Godwin share, would be susceptible of parti-
tion until it was set apart, and therefore denied that it was
not susceptible of partition.    The infant defendants, through
their respective guardians *ad litem,* filed the usual formal
answers, excepting that the Godwins answered more fully
as to the construction of the will.    The commissioners,
therefore, in this respect, not only acted in accordance with
the . decree and commission, directing them to divide the
property into six equal parts, but in accordance with the
prayer of the bill, and as consented to by all the adult de-
fendants.    It was, of course, necessary to allot the Balti-
more street property to one of the six shares—which one
was necessarily left to the discretion of the commissioners.
In allotting the property to Margaret Godwin there is
nothing from which we can assume or infer that the com-
missioners did not act fairly—indeed, it is not pretended
that there was any evidence of prejudice, partiality or in-
tentional unfairness of any kind by the commissioners in
any of their allotments.    But it is contended that they set
apart this Baltimore street property to one of the Godwins
instead of to the Frank Godwin share, because of the alleged
error in the interlocutory decree directing that it should be
divided into five parts, which would have been impossible
if that property had been included in that sixth.    It is true
that the commissioners may have been influenced to some
extent by that direction in the interlocutory decree, but of
that we cannot be certain, for they may still have thought
it best to assign it to one of the five Godwins.    If the case
was remanded to the commissioners for further action the

loss to the exceptants would probably be much greater on account of the costs than it will be under our decision of the case, even if we felt justified in doing that, of which we will speak later. We have so recently considered the duties of commissioners in making partitions, and the power the Court can properly exercise over their returns, that we will only refer to that case, *Claude* v. *Handy*, 83 Md. 235, where our views are given. Although Margaret Godwin was under age when the bill was filed, she is of age now, and probably was when the commissioners acted, as when she and others filed the exceptions to the report they stated she was an adult. There is nothing in the evidence or in the law as announced in the above case that would justify us in interfering with the part of the return allotting the Baltimore street property to Miss Godwin.

2. According to the direction of the decree and the commission, the commissioners subdivided the Frank Godwin sixth into five parts, one of which was allotted to the five Godwin heirs, one to Margaret W. Dorsey, one to Andrew Banks, one to Harry L. Slingluff, and the other to Alice Maud Jacobi, Annie Lepley, William Lepley and Matthew Lepley. It is contended that that was erroneous, because there was no ultimate or final partition in severalty of that sixth interest. It is undoubtedly true, as was said in *Dugan et al.* v. *Mayor, etc., of Baltimore*, 70 Md. 6, " that the object of partition is a division of the property between the several co-tenants, so as to put an end to the co-tenancy, and to vest in each person a sole estate in a specific part or allotment of the property." But there is no reason why those who desire to continue the relation of co-tenancy between one another should not be permitted to do so, and the decided weight of authority is to the effect that they can. *Freeman on Co-Ten. and Part.*, section 508. There can be no doubt, therefore, that the Court was right in refusing to entertain any objection on that ground, by the Godwins, to the allotment to Mrs. Jacobi and others of Subdivision L, and we are only called upon to inquire whether

the appellants, or any of them, can urge that objection to the allotment to them, and have the action of the commissioners set aside. If the law quoted from *Dugan* v. *Mayor, etc., of Baltimore, supra*, be technically and literally applied, all of the property which Mrs. Godwin was interested in should be subdivided between the co-tenants, if susceptible of partition, and if not, all of it, and not simply the one-sixth, should be sold and the proceeds divided. The latter course is probably the only way by which such subdivision could have been made. That would have been most disastrous to these appellants, as the costs would probably have amounted to more than the entire one-fifth of the one-sixth now in controversy—in other words, the entire interest of the five Godwin children, in the share of their brother's sixth, would have been consumed in acquiring their own five-sixths in severalty. Yet if we must strictly enforce the principle of law invoked by them, the appellees might have demanded that that course be pursued. But neither the plaintiffs nor the defendants asked for the enforcement of that rule as to the whole property, but were apparently content to have one-sixth of the whole set apart to each of the Godwin heirs, and the remaining sixth to be disposed of separately. It is true that the plaintiffs asked that the latter be sold, but, as we have seen, some of the adult defendants, in their answers to the bill, denied that it was not susceptible of partition, and thus in effect objected to a sale of the whole one-sixth. The testimony taken before the interlocutory decree was passed did show that the property originally allotted to Mrs. Godwin could not be divided in kind, except by a sale of at least a part of it, but as apparently the object of all the parties was to prevent a sale when that could be avoided, the interlocutory decree provided for this being divided into five parts, if that could be done. That decree was submitted to the solicitors for the respective parties, including those representing the appellants, before the Judge was called upon to act upon it. It is true that it was understood that

there would be an appeal from that decree as to the construction of the will, and by the trustee in insolvency of Andrew Banks as to his interest, and that those questions alone were considered by this Court, but the same decree directed that partition and the mode of making it, and it was set out in full in the former record in this Court. The parties or their solicitors, therefore, not only knew what it contained before it was passed, but had every opportunity to become thoroughly acquainted with it when it was before us. But after that appeal was disposed of, by an affirmance of the decree, the commission was issued to five commissioners, authorizing them, or a majority of them, to make the partition and specifically directed them to divide this sixth into five equal parts, if they determined that could be done, one of which was to be allotted to the five Godwins. The commission was presumably issued under the direction of the plaintiffs, and, indeed, the application of their solicitors to have a fee allowed for their services states that " the decree of the Court below having been affirmed, they then proceeded to bring about *the partition directed to be made.*" That was filed shortly before the report of the commissioners was returned. Afterwards the Godwin heirs filed objections to the report, but did not include this one, and it was not until after a final decree had been passed, ratifying the report, that it seems to have been brought to the attention of the Court, that this alleged error had been made. The final decree was then stricken out, and the parties heard on an additional exception then filed, raising this question. Under such circumstances as we have stated, surely a Court of Equity is not required to grant the relief now sought by these exceptions, for the benefit of the plaintiffs in the original case, who were adults when the proceedings were commenced, but they must be treated as consenting to the partition and the plan proposed and adopted. It was practically a consent-decree in so far as the partition is concerned, and although an appeal was contemplated on the questions we have already stated, no objection was made

to the decree on account of the provisions for the partition. If such question as we are now considering was to be raised at any time, it should have been done before the costs were incurred. Of course we do not mean to say that in all cases parties to partition proceedings must put themselves on record as objecting to provisions in the interlocutory decree before the commission was executed, if they desire to make such objections, but when they are fully cognizant of the terms of the decree, and not only do not bring to the attention of the Court any supposed error, inadvertently made, but, on the contrary, act in such way as to imply their full consent to it and make no objection to the method of proceeding until their exceptions to the return of the commission on other grounds are overruled, they must be regarded as having done what they had a right to do—consent to that method of proceeding.

Although Section 26 of Art. 5 of the Code permits a review of previous orders on an appeal from a final decree or order, unless an appeal has been taken under section 25, it does not of course refer to previous orders that have been concurred in by the party appealing, under which parties acted without objection and incurred large costs. Although this Court held in *Bull* v. *Pyle*, 41 Md. 419, that an interlocutory decree directing a partition is open for review on an appeal from the final decree, it does not necessarily follow that we could not have passed on this question when that interlocutory decree was being considered in the other appeal. It is true that that appeal was, primarily, to have the will construed, but the principal object in having that done was to determine how the property should be divided. The appeal was taken " from the decree "—not any particular part of it—and irrespective of the question whether an interlocutory decree simply directing a partition *and nothing else*, can be appealed from, if these parties, or any of them, had any objection to the method of division directed to be made as the result of the construction placed on the will by the Court, and had presented it when the

case was here before, we would not have hesitated to pass on it. for the purpose of saving costs, if for no other reason. Indeed, it might be said that there is some question whether the appellants are not precluded from now raising any question that appeared on the face of the decree, as this did, under the principle settled in *Young* v. *Frost*, 1 Md. 377. There are few cases, if any, where it is more important to settle such matters as soon as possible than in those for partition, as the bulk of the costs are usually incurred in such proceedings between the dates of passage of the interlocutory and final decrees. But without determining that they are thus technically precluded by reason of the former appeal from the interlocutory decree, it is a strong circumstance to take into consideration, in connection with the other facts, as evidence of their consent to this method of dividing the one-sixth and, at least so far as the adults are concerned, we think they are clearly estopped from now objecting to it.

The infants were not only represented by their guardian *ad litem*, their father, but by able and competent solicitors, appointed by the Court for that purpose. These solicitors were cognizant of what was being done and the interlocutory decree was submitted to them before it was acted on by the Judge. If it appeared that they had inadvertently overlooked any provisions in the decree that would injuriously affect the infants, a Court of Equity might still protect the latter, but it is difficult to see how they can be materially injured, if at all. If the whole sixth, exclusive of the cash, instead of one-fifth of the sixth, was sold, it would certainly greatly increase the costs—possibly would cost nearly five times as much as the one-fifth would, as the commissions, the clerk's and auctioneer's fees would probably be nearly that much more, and the advertisement of the whole sixth would be much larger than for the one-fifth, if all the properties were properly described. But, in addition to that, there are other infants interested in this sixth, and if it be true that we must direct a sale of the whole sixth, at the instance of the appellants, because each tenant in common

is entitled to his share in severalty, why should we not require a sale of the whole property affected by the proceedings ? For, as we have already seen, each had an undivided interest in the whole, and each had, according to the theory of the appellants, a right to have his or her interest in severalty, which was to be taken out of the whole, and not out of a sixth, set apart out of the entire property.   With such possible results as those, we cannot reach the conclusion that it is for the interest of the Godwins, who are still infants, to set aside the action of the commissioners, for the reason assigned.   As we said in *Gittings* v. *Worthington*, 67 Md. 149, " it is undoubtedly within the power of a Court of Equity to adapt its methods to the exigencies of justice, being careful, however, not to grasp at forbidden power, for the purpose of relieving the hardship of a particular case. In the present instance, it is the duty of the Court to allot to the claimants their share of this property, and it is simply a question of proceeding, whether this result is accomplished by one division of the whole mass, or by a series of subdivisions."   See also *Haywood* v. *Judson*, 4 Barb. 228 ; *Lucas* v. *Peters*, 45 Ind. 318.

The decree overruling the exceptions to the return of the commissioners and ratifying and confirming said return will be affirmed.

We have had some difficulty in determining whether the decree for the sale of the property mentioned in " Subdivision F " was desired by the Godwins in the event of the other decree being affirmed, but we must act on what we find in the record.   In *Gittings* v. *Worthington*, *supra*, in speaking of property allotted to several co-tenants, it was said : " When the portion to which they are entitled collectively has been allotted to them, they can, by petition in this cause, obtain a redivision among themselves, according to their respective interests, or a sale of the whole of their allotment, and a division of the proceeds," etc., and this decree was passed, as we understand, on that authority.   But we do not find in the record any evidence of a petition, or

C. & P. TELEPHONE CO. vs. BALTO. CITY.   689

Md.]                              Syllabus.

application of any kind, from any of the Godwins to have " Subdivision F " sold.   It may be that when they know our conclusions as to the other decree, they will not desire to sell the property, but. may prefer to keep it and thus avoid the cost of sale and retain the investments.   But however that may be, two of them are still infants and there should be a petition filed in proper form, alleging that the property thus allotted to them is not susceptible of partition, etc., and the infants ought to be made parties to that proceeding.   It is true they are already in this cause, but not for such purpose as the sale of the property thus allotted to them.   As there is nothing in the record to show that there was a proper application for the sale, and as the decree directing it is appealed from, there is nothing left for us to do but reverse it.   We will direct that the parties to each side pay their own costs.

> *Decree ratifying and confirming the commissioners' return affirmed, and decree directing sale of property in "Subdivision F" reversed, the parties to each side to pay their own costs.*